Isadobe Bookstein, Off. Ref.
Plaintiff has instituted this action for a separation on the ground of abandonment and nonsupport. Defendant concedes the abandonment and that, accordingly, if his abandonment is without justification, plaintiff is entitled to a decree of separation. However, he claims that his abandonment of plaintiff was justifiable and that such abandonment occurred as soon as he discovered that an Alabama divorce procured by plaintiff against her first husband was allegedly void and he counterclaims for a decree of annulment of the marriage to plaintiff on that basis.
The facts are not in dispute and findings of fact and conclusions of law have been waived.
The undisputed facts are as follows:
Prior to August 8, 1956, plaintiff was married to one Edward V. Langston in the State of Hew York; from that date to the date of her Alabama decree of divorce she and Langston resided and were domiciled at 16 Montgomery Street, Walden, Orange County, Hew York; Langston was never physically present in the State of Alabama; plaintiff was employed at Newburgh, Hew York, and took a vacation or leave of absence but did not terminate her employment, and during that period went to Alabama for the sole purpose of obtaining a divorce and was there for no more than one week; in thus going to Alabama she did not terminate her domicile or residence in the State of Hew York, and had no intention of doing so; she had no intention to make Alabama her residence or domicile and did not do so; on August 6, 1956 she filed a suit for divorce against her then husband in Alabama; he filed an instrument of waiver and answer which constituted an appearance by him in the action; immediately after obtaining her decree of divorce in Alabama on August 8, 1956, she returned to her residence and domicile in Walden, Hew York, where the issue of her marriage to Langston were domiciled and resided and where they attended school and where she has resided and has been domiciled ever since; during all of that period she was and has continued to be registered as a voter in Hew York State; that the marital status or res of plaintiff and her then husband continued in Hew York State.
*292 On January 11, 1959, plaintiff and defendant were married at Ellenville, New York, and lived together as husband and wife until on or about July 18,1961 at which time defendant left the plaintiff, upon discovery of the alleged invalidity of plaintiff’s Alabama decree of divorce from her prior husband; plaintiff then instituted this action for separation, in which the summons and complaint were served on defendant on July 31, 1961 and in which defendant answered and counterclaimed for a decree of annulment.
It is clear that, at all of the times above stated, plaintiff was a resident and domiciliary of New York State and was never a bona fide resident or domiciliary of Alabama.
It is equally clear then that during the few days that she was in Alabama, the marital status or res of plaintiff and her prior husband was in the State of New York.
The question for determination in this action is whether or not defendant, a stranger to the Alabama divorce, may attack the Alabama decree collaterally in the courts of New York State, in the face of the Full Faith and Credit Clause of the United States Constitution. (U. S. Const., art. IY, § 1.)
It seems no longer to be in doubt that neither party to a decree of divorce, wherein the defendant has appeared, can attack the decree collaterally in a sister State.
It is also generally the law that a granting State will not permit a collateral attack therein on one of its divorce decrees by one of the parties thereto, where both parties have appeared in the action and thus conferred jurisdiction of the person, even though through fraud practiced on the court as to residence, they have ostensibly conferred jurisdiction of the subject matter, i.e., the marital status or res. Such jurisdiction cannot be actually conferred even by consent. This denial by the granting State is based upon the equitable doctrine of estoppel. In other words, a court of equity leaves the parties where they find themselves as a result of their own fraud practiced on the court. That being so, the attack cannot be made collaterally in a sister State by one of the parties to the decree in a granting State, where both parties have appeared, by reason of the Full Faith and Credit Clause of the United States Constitution.
Thus, in the following cases, the New York courts refused to permit collateral attacks on foreign divorce decrees, by persons who had appeared in the actions in the foreign States, or who were served with process in the foreign States: Tiedemann v. Tiedemann (225 N. Y. 709 [1919]) involving a Nevada divorce; Pearson v. Pearson (230 N. Y. 141 [1920]) also involving a *293 Nevada divorce; Borenstein v. Borenstein (272 N. Y. 407 [1936]) involving a California divorce; Glaser v. Glaser (276 N. Y. 296 [1938]) involving a Nevada divorce; Hess v. Hess (276 N. Y. 486 [1937]) involving a Nevada divorce; Vernon v. Vernon (288 N. Y. 503 [1942]) involving a Nevada divorce; and Senor v. Senor (272 App. Div. 306, affd. 297 N. Y. 800 [1948]) which involved a Nevada divorce.
We come then to the question of whether or not a stranger to the foreign decree can attack the same collaterally in a sister State.
In the second case of Williams v. North Carolina (325 U. S. 226) decided May 21, 1945, the Supreme Court of the United States did permit the State of North Carolina, in a criminal case against two of its domieiliaries, to make a collateral attack upon two Nevada divorce decrees, obtained by them on the ground that they were not bona fide residents or domicilaries of Nevada, at the time when they instituted divorce actions therein. In Williams, defendants were not served in Nevada nor did they appear in the action. The decision, however, was not based on that fact. Indeed, on that score, in the first case of Williams v. North Carolina (317 U. S. 287) the court overruled the longstanding rule of Haddock v. Haddock (201 U. S. 562).
At page 230, in the second Williams case, the court said: “ It is one thing to reopen an issue that has been settled after appropriate opportunity to present their contentions has been afforded to all who had an interest in its adjudication. THIS APPLIES ALSO TO JURISDICTIONAL QUESTIONS. AFTER A CONTEST THESE CANNOT BE RELITIGATED AS BETWEEN THE PARTIES. * * * BUT THOSE NOT PARTIES TO A LITIGATION OUGHT NOT TO BE FORECLOSED BY THE INTERESTED ACTIONS OF OTHERS ”. (Emphasis supplied.)
A careful analysis of the second Williams case (supra) might even seem to indicate that a stranger to the divorce decree could attack it collaterally in a sister State, even if the granting State does not permit such an attack by a stranger.
However, in Johnson v. Muelberger (340 U. S. 581) decided March 12, 1951 a collateral attack by a stranger to a Florida divorce decree was not permitted to be made in the courts of New York State. That determination was based upon the proposition that Florida does not permit a collateral attack on its divorce decrees even by strangers thereto. At page 589, the court said: 1 ‘ When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers *294 in the rendering state, it cannot be attached by them anywhere in the Union. The Full Faith and Credit Clause forbids.” (Emphasis supplied.)
It would seem certainly to follow that where the rendering State permits a collateral attack by a stranger, a sister State may permit such attack without running counter to the Full Faith and Credit Clause of the United States Constitution.
Thus, the New York courts have permitted collateral attacks upon foreign decrees by strangers to the foreign actions in Matter of Lindgren (293 N. Y. 18 [1944]) which involved a Florida decree, and Urquhart v. Urquhart (272 App. Div. 60, affd. 297 N. Y. 689 [1947]) which involved an Arkansas decree.
In Schwartz v. Schwartz (219 N. Y. S. 2d 751) decided August 3, 1961 the court permitted a stranger to the Nevada divorce action to attack the decree collaterally on the ground that neither party to the action was a domiciliary of Nevada and on the further ground that the defendant therein had not been served with process or appeared therein. In that case, the court said, at page 752: “ It is alleged in the complaint that the Nevada court lacked jurisdiction over the subject matter of the action (for lack of domicile in that state of either party to the action) as well as of the person of the defendant in that action who was not served with process nor appeared therein. ’ ’
While it does not appear that the court’s decision was based on lack of jurisdiction of the subject matter or of the person or of both in the Nevada action, it did state at page 752, that “ It is undisputed that neither the decedent [the defendant in the Nevada action] nor his personal representative, in this case the executor of his estate, could question the validity of the Nevada divorce decree. * * * However, since ‘ it is neither a right of the decedent nor of his estate which is the subject of ’ the action herein, plaintiff is entitled to question the validity of the divorce decree and re-marriage in support of his asserted right to his proper share in the decedent’s estate.”
In that case, decedent was plaintiff in the Nevada action. Hence neither he nor his representative could attack the decree collaterally either in Nevada or in New York State. Plaintiff in the New York State action was the issue of the first marriage, his mother having been the defendant in the Nevada divorce action. Plaintiff, therefore, as a stranger to the decree was permitted to attack the decree collaterally in this State on both grounds, i.e., lack of jurisdiction of the subject matter as well as of the person of the defendant in that action.
While holding that the parties to the action could not collaterally attack the decree in New York State, in effect, it held *295 that the stranger, not in privity with the deceased defendant could do so, without violating the Full Faith and Credit Clause of the Federal Constitution.
Plaintiff contends that defendant herein, even though a stranger thereto, cannot attack collaterally the Alabama decree in this State and in support of that contention cites the following authorities: Boxer v. Boxer (12 Misc 2d 205, affd. 7 A D 2d 1001, affd. 7 N Y 2d 781); Shea v. Shea (270 App. Div. 527); Cook v. Cook (342 U. S. 126); Sherrer v. Sherrer (334 U. S. 343) and Nitschke v. Nitschke (21 Misc 2d 632).
Boxer v. Boxer (supra) is inapposite, as it involves a collateral attack in this State by one of the parties to the Alabama divorce action, who had appeared therein.
Here the collateral attack is not made by a party to the Alabama divorce action but by one who subsequently married one of the parties to the Alabama divorce action, or, in other words by a stranger to the Alabama decree.
So far as the case of Shea v. Shea (270 App. Div. 527, supra), is concerned, there the collateral attack was attempted by the executors of the second husband, on the divorce decree obtained by his wife from her first husband in Illinois and the court held that such collateral attack could not be made in the courts of this State.
In that case, it appears that defendants had instigated proceedings in Illinois to challenge the decree there granted and that the proceedings were there dismissed. The opinions do not indicate the grounds for such dismissal. With respect thereto, the prevailing opinion says at page 523: “It is unnecessary to pass upon the effect of the dismissal of proceedings in the Illinois court instigated by defendants to challenge the validity in Illinois of the decree there granted.”
Of course, unless the Williams case (supra) is to the contrary, where the granting State does not permit a collateral attack by a third person on one of its divorce decrees, where there has been a personal appearance by the defendant, in the divorce action, it follows that the interdiction of the Full Faith and Credit Clause of the Federal Constitution, prevents a collateral attack thereon in a sister State.
The opinions in the Shea case (supra) do not indicate whether or not Illinois permits a collateral attack by a stranger on one of its decrees of divorce. For present purposes, we may assume that it does not.
In any event that question is not discussed in either the prevailing or dissenting opinion in the Shea case as the basis of either one. In that case (Shea v. Shea, 270 App. Div. 527, 530), *296 the prevailing opinion said: “ As the original parties thereto may not attack the judgment, the defendants, strangers herein, may not do so. (Hynes v. Title Guarantee Trust Co., 273 N. Y. 612, 615.) Defendants’ testator is not deemed to he ‘ one whose rights have been directly invaded ’; and even if they were invaded, he would be required to make the attack directly. (Arcuri v. Arcuri, 265 N. Y. 358, 361.)”
The cases thus cited, therefore, would seem to be the basis for the decision in the Shea case. It would seem to follow, therefore, that the Shea case is to the effect that an Illinois divorce decree is immune from collateral attack by a stranger in this State regardless of whether or not Illinois permits such an attack.
However, it must be borne in mind that in Hynes v. Title Guar. & Trust Co. (273 N. Y. 612) cited in Shea, the divorce decree sought to be attacked was a French decree and no question appears to have been raised as to jurisdiction of the res, the marital status or of the person. The question attempted to be raised collaterally by the stranger was as to whether the decree had become final and the court held that that question could not be raised collaterally by a stranger.
As to the second case relied on in Shea, the case of Arcuri v. Arcuri (265 N. Y. 358) that case involved an Enoch Arden divorce decree obtained in this State. There was no question of the jurisdiction of the res, i.e., the marital status or of the person. It appeared that the petitioner in that proceeding gave perjured testimony, which resulted in her obtaining her decree. The collateral attack in this State on one of the decrees of the courts in this State, where the court had jurisdiction of the subject matter and of the person when it granted the decree, was held immune from collateral attack on the ground that the perjury related not to jurisdictional questions but rather to the merits of the proceeding.
It does not seem to me that either the Hynes case or the Arcuri case negates the proposition, that, where the court was without jurisdiction of the subject matter, i.e., the marital status, a collateral attack on the decree can be made by a stranger to the decree, if such collateral attack is permitted by the granting State.
Cook v. Cook (342 U. S. 126, supra) involved a collateral attack by the second husband in Vermont on a Florida decree obtained by the wife against her first husband. The record failed to disclose in the Vermont action whether the defendant in the Florida action was served with process or appeared *297 therein and remanded the case to the Vermont courts to take proof on that subject, since if the prior husband did not appear therein or if he was not properly served with process, he could attack the decree collaterally. On the contrary, if he were properly served with process or appeared therein, he could not attack the decree collaterally in Florida, and, hence, could not in Vermont and neither could the plaintiff, the second husband. (See Johnson v. Muelberger, 340 U. S. 581, supra.)
The Co oh case turned on the question of jurisdiction of the person of the defendant in the Florida action rather than on jurisdiction of the subject matter, i.e., the marital res. Moreover, it involved a Florida divorce decree and not, as here, an Alabama divorce.
As has already been shown, where there has been due service of process upon or an appearance by a defendant in a Florida divorce action, that State does not permit, in such a case, a collateral attack on one of its divorce decrees, either by a party to the action or by a stranger. (Johnson v. Muelberger, supra.)
Here, we are dealing with an Alabama divorce decree and not a Florida one.
So, too, Sherrer v. Sherrer (334 U. S. 343, supra) involved a collateral attack by the husband in Massachusetts on a Florida divorce decree in an action in that State where he had appeared. The court held that he was barred from such attack in the Massachusetts courts. Basically, the determination in that case rested on the proposition, as stated by the court at page 350: “ This Court has also held that the doctrine of res judicata must be applied to questions of jurisdiction in cases arising in state courts involving the application of the full faith and credit clause where, under the law of the state in which the original judgment was rendered, such adjudications are not susceptible to collateral attach.” (Emphasis supplied.)
Again, as we have seen, Florida permits no such attack by a party to the action, or even by a stranger thereto. Hence, Massachusetts could not permit it.
Here, once again we are dealing not with a Florida divorce nor with an attack by a party who had appeared in the action. Here we are dealing with an attack on an Alabama divorce decree, by a stranger thereto.
Coe v. Coe (334 U. S. 378) involved a collateral attack in Massachusetts by the wife upon a Nevada decree of divorce, granted in her favor in the action in which she and her husband had both appeared and it was held that such collateral attack could not be made.
*298 That decision was based on the proposition that Nevada does not permit a collateral attack in such a case and that, hence, Massachusetts could not.
The court at page 383, said: ‘1 It is clear that the decree of divorce in question is valid and final in the State in which it was rendered and, under the laiv of Nevada, may not be subjected to the collateral attack permitted in this case in the Massachusetts courts. Respondent does not urge the contrary.” (Emphasis supplied.)
In other words, since Nevada permits no such collateral attack, Massachusetts could not. Moreover, this involved a collateral attack by the very person who obtained the decree.
In Nitschke v. Nitschke (21 Misc 2d 632, supra) the court denied a decree of annulment in an action brought in this State by the second wife against her husband, on the ground that his Alabama decree of divorce against his first wife was obtained through fraud as to his alleged Alabama residence. And there the court held that neither party to the Alabama action could attack the decree collaterally in Alabama and that, consequently, the plaintiff, a stranger to the Alabama divorce action, was barred from attacking it under the Full Faith and Credit Clause of the United States Constitution.
The facts in the instant case are substantially the same, as in the Nitschke case (supra) so that the Nitschke case would appear to sustain plaintiff’s contention in this case.
With the most profound respect for the Justice who rendered that decision, I am constrained to disagree with the conclusion therein barring a stranger to the decree from a collateral attack thereon in this State.
In the Nitschke case, the court withheld its decision until the determination by the Court of Appeals in the case of Boxer v. Boxer (12 Misc 2d 205, affd. 7 A D 2d 1001). The Court of Appeals affirmed without opinion (7 N Y 2d 781). But Boxer is not authority for the proposition that a stranger cannot attack the Alabama decree, collaterally in this State.
In Boxer, the collateral attack was made by a party to the Alabama action who had appeared therein. Alabama permitted no such attack. Johnson v. Muelberger (340 U. S. 581, supra) also relied on by the Special Term in the Nitschke case, as defeating the right of a stranger to an Alabama divorce decree to attack it collaterally in this State is, as I read, not authority for that proposition. As we have already seen, in the Johnson case (supra) what was involved was a Florida divorce and the court held that since Florida does not permit a collateral attack *299 by a stranger on its divorce decrees, the Full Faith and Credit Clause bars the State of New York from permitting such an attack.
However, if Alabama does permit a collateral attack on its decrees by a stranger to the action, it would then seem to follow that New York is not barred from entertaining a collateral attack, by a stranger, on an Alabama decree.
The Special Term opinion in the Nitschke case (supra) does not discuss any Alabama decisions which permit an attack on its decrees by a stranger and the conclusion seems to be inevitable that they were not called to the court’s attention.
The only Alabama decision cited in the Special Term opinion in the Nitschke case, is Levine v. Levine (262 Ala. 491). That case is authority only for the proposition that the parties to the action who had appeared therein could not attack an Alabama decree collaterally in its courts. It follows, of course, that the parties thereto cannot attack the Alabama decree collaterally in this State. It does not follow therefrom, however, that a stranger to the Alabama action cannot attack the Alabama decree collaterally in New York State. If Alabama does permit such a collateral attack, it follows that such a collateral attack may be made in the courts of this State.
The Levine case (supra) cited in the Nitschhe case, was determined upon the ground of equitable estoppel, as the collateral attack was by one of the parties who had appeared in the Alabama action.
Indeed, the Supreme Court of Alabama went so far as to say, in Hartigan v. Hartigan (272 Ala. 67, 75): “ Not only is it conclusive that the 1954 divorce decree was void for want of jurisdiction of the subject matter in Alabama, hut it is not entitled to full faith and credit in other jurisdictions.” (Emphasis supplied.)
In the Hartigan case (supra) as here, neither party was a domiciliary of Alabama when the divorce action was instituted. Some years after the decree, the plaintiff therein sought a modification of the decree with respect to alimony payments. During that proceeding, it was conceded by both parties that neither was a resident of Alabama at the time the divorce action was instituted. The court of its own motion vacated the decree for lack of jurisdiction to entertain the action, since it lacked jurisdiction of the subject matter, i.e., the marital res.
We come then to the question of whether or not Alabama permits a collateral attack in Alabama by a stranger to one of its marital decrees.
*300 The courts of Alabama have no inherent jurisdiction to grant divorce decrees. Their jurisdiction in that matter is such as is conveyed by statute.
The courts of this State will take judicial notice of the residence and domicile requirements of the State of Alabama. (Matter of Johnson, 301 N. Y. 13, 16, revd. on other grounds 340 U. S. 581, supra.)
Section 27 of title 34 of the Code of 1940 of the State of Alabama as amended and in force at the time plaintiff instituted her action for divorce against her prior husband, provided as follows: “ No bill can be filed for a divorce * * * unless the party applying therefor, whether husband or wife, has been a bona fide resident citizen of this state for twelve months next preceding the filing of the bill which must be alleged in the bill and proved; provided however, the provisions of this section shall not be of force and effect when the court has jurisdiction of both parties to the cause of action.”
Under Alabama law, residence in its divorce statutes means domicile. (Gee v. Gee, 252 Ala. 103.) If neither party to the action is a domiciliary of Alabama, the courts of Alabama are without jurisdiction to entertain an action between them for divorce. (Jennings v. Jennings, 251 Ala. 73.)
Indeed, in the Jennings case (supra) the court struck down as unconstitutional a statute of Alabama, insofar as it could be interpreted to authorize the courts of that State to grant a divorce, where neither party to the action was domiciled in that State.
The court in that case, said (p. 74): “ Jurisdiction, which is the judicial power to grant a divorce, is founded on domicile under our system of law. * * * This is true because domicile in the state gives the court jurisdiction of the marital status or the res which the court must have before it in order to act. * * * The domicile of one spouse, however, within the state gives power to that state to dissolve the marriage. * * * neither party here is a resident of Alabama. Jurisdiction of the res is essential because the object of a divorce action is to sever the bonds of matrimony, and unless the marital status is before the court, the court cannot act on that status. * * * Furthermore it is recognized that unless one of the parties has a residence or domicile within the state, the parties cannot even by consent confer jurisdiction on the. courts of that state to grant a divorce. * *. * [Emphasis supplied.] 1 * * * The principle dominating the subject is that the marriage relation is so interwoven with public policy that the *301 consent of the parties is impotent to dissolve it contrary to the law of the domicil.’ ”
Obviously, jurisdiction of the subject matter, i.e., the marital res, cannot be conferred by consent of the parties.
In Smith v. Smith (247 Ala. 213) decided July 26, 1945 the Supreme Court of Alabama expressly held that in a second husband’s suit for an annulment of a marriage, the validity of the wife’s divorce from her prior husband, could be raised collaterally, in the pleadings and by argument of plaintiff’s counsel. It is true that, on the merits, plaintiff was denied relief, but the collateral attack was permitted. The fact that in that case the service upon the husband in the divorce action was by publication was not the sole reason assigned for permitting the collateral attack.
Both jurisdiction of the subject matter and of the person were challenged and passed upon. As to the former the court said (p. 219): “We have examined the record and evidence as to the jurisdiction of the subject matter in appellant’s former suit for divorce and find no failure in that respect.”
In other words, the court obviously found that plaintiff in the divorce action was a bona fide domiciliary of the State of Alabama. That State therefore had jurisdiction of the marital res of one of its domiciliarios and consequently had jurisdiction of the subject matter.
It determined that the service by publication was valid and finally the court said (p. 219): “ The bill was timely filed. * * * It is without merit as to the challenge of jurisdiction of the subject matter or of the person in the former suit.” (Emphasis supplied.)
In other words, the Alabama court permitted a collateral attack on the decree of its own court by a stranger to the action as to its jursidiction of the subject matter of the action which terminated in a decree of divorce.
Here, the defendant stands in the same position as did the plaintiff in the Smith case (supra) i.e., the second husband attacking the Alabama divorce granted to plaintiff from her prior husband, except that here the collateral attack is made in New York State rather than in Alabama, in which the decree of divorce was obtained.
In Aiello v. Aiello (272 Ala. 505) decided September 14, 1961, the Supreme Court of Alabama, as a matter of pleading, permitted a collateral attack by a second husband against an Alabama decree of divorce obtained by the wife against her first husband. The basis for the attack was fraud in the matter *302 of her residence. True, the court did not pass upon the merits, but it did permit an amendment of the complaint on the question of timeliness, which would state a cause of action against which no demurrer would lie. This can mean nothing else than that the Alabama courts permit a collateral attack on one of its divorce decrees by a stranger thereto on the basis of the wife’s fraud as to residence in her divorce action, provided only that the action was timely brought.
In an action in the Superior Court of Connecticut, of Roberts v. Roberts (Case No. 2073) Hon. Elmer W. Ryan, a Judge of that court, had before him for determination, the precise factual and legal situation, as is now before this court. On July 15, 1960 he rendered a decision, which is on file in the office of the Clerk of the Superior Court at Stamford, Connecticut, which has not been officially reported, but a photostatic copy of which has been furnished to me.
His opinion follows: “In this action the plaintiff seeks a decree annulling a purported marriage to the defendant which took place March 11, 1959. The defendant was previously married to one Robert Parke Fisler. She has resided in Connecticut for the past 6 or 7 years. On October 7 or 8, 1958, the defendant purchased a roundtrip ticket and flew to Montgomery, Alabama. She stayed at a hotel that night and the next day saw an attorney whom she had previously engaged, signed some papers in his office and paid him for his services. She returned to Connecticut immediately having spent just one night in Alabama. At no time did she appear in a court house or before a judge. In 2 or 3 days the defendant received in the mail a copy of an Alabama decree granting her a divorce. Defendant never intended to make Alabama her home. Plaintiff believed that the defendant was properly divorced from Fisler and first learned that there was a question of its validity in October, 1959, at which time he moved out of the house and has not resided there since. The defendant was never domiciled in Alabama nor was her husband Fisler. A Connecticut resident may attack collaterally the validity of a foreign decree of divorce on the ground of lack of jurisdiction. White v. White, 138 Conn. 1, 8. Since Johnson v. Muelberger, 340 U. S. 81, 95, L. Ed. 552 holds that a collateral attack cannot be made in New York on a Florida divorce decree where Florida law barred collateral attack, it becomes necessary to determine whether or not a collateral attack on the instant decree would be permissible in Alabama. The Alabama statute was held to be unconstitutional so far as it could be interpreted to authorize the courts to grant a divorce where neither spouse is domiciled in *303 Alabama. Jennings v. Jennings, 251 Ala. 73, 36 S. 2d 236. See also Levy v. Levy, 256 Ala. 629, 56 S. 2d 344. Under Alabama law a stranger to the proceeding may collaterally attack an Alabama decree of divorce. Smith v. Smith, 247 Alabama 213, 218, 23 S. 2d 605, 610. Since the plaintiff could attack the decree in Alabama, he certainly may do so in Connecticut.
“ Neither party to the Alabama decree was ever domiciled in Alabama and the Alabama court, therefore, was without jurisdiction to enter a decree divorcing the defendant from her husband Fisler.
‘ ‘ A decree may enter declaring the purported marriage between the plaintiff and the defendant void. The property settlement dated April 6,1960, is approved.”
The attack in the Roberts case (supra) was on the basis of the plaintiff in the Alabama divorce action not being a domiciliary of Alabama, and hence leaving the Alabama court, without jurisdiction of the subject matter, i.e., the marital status or res, and I find myself in accord with Judge Evan’s determination.
In Hampton v. McConnel (3 Wheat. [16 U. S.] 234, 235) the United States Supreme Court held: 11 that the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States.”
The doctrine there laid down continues as the doctrine to this day. (Fauntleroy v. Lum, 210 U. S. 230, 236; Williams v. North Carolina, 317 U. S. 287, 293-294, supra.)
Finally, since Alabama permits a collateral attack by a stranger, New York State may do so. And in so doing it is giving to the judgment of a sister State the same full faith and credit, as is given to it by the granting State and to the degree required in the Hampton case (supra).
I therefore find and conclude as follows:
Neither of the parties to the Alabama decree was a bona fide domiciliary of Alabama when the decree was granted or the action instituted; that such decree is subject to collateral attack in Alabama and hence also in this State, by defendant; that Alabama never had jurisdiction of the res, i.e., the marital status of the parties in the action in which the decree was granted; that jurisdiction of the res was assumed by Alabama by reason of fraud practiced on it by plaintiff as to her domicile; that, as to defendant, the decree is void, even though binding *304 on the parties to the Alabama action; that defendant is entitled to judgment dismissing the complaint for a decree of separation and to affirmative judgment on his counterclaim, annulling his marriage to plaintiff, without costs.