Lawrence J. Peltin, J.
Defendant in this action was married in 1928 to one Lena Altshafler (or Altschafl) in Munich, Germany. Sometime in 1942 he obtained a divorce in Nevada, after serving his wife by publication. She did not appear in that *223 action. Shortly thereafter he participated in a marriage ceremony with one Elizabeth Hacker, with whom he lived until 1954. Plaintiff in this action was living with her second husband in the same apartment building as defendant and his purported second wife. This proximity blossomed into romance, and after shedding their mates by means of Mexican divorces, plaintiff and defendant applied for a marriage license in this State and went through a civil marriage ceremony. This was in the latter part of 1955. The parties thereafter lived together as man and wife, maintaining residences in New York City and Lake Mahopac, New York, and a home in Florida, where they owned an orange grove.
Sometime in 1956, defendant told plaintiff of some difficulty he was having with his first wife, and that it might be necessary to go through another divorce proceeding with her. Thus, in November, 1957, he obtained an Alabama decree of divorce from his first wife. This time she appeared in the action.
There is indication that plaintiff was at that time concerned as to her status, and to ease her mind, defendant took her to see an attorney in Carmel, New York, who charged her $10 for the consultation and presumably advised her that her marriage to defendant was valid. She remained with defendant until 1961, when she consulted an attorney, purportedly as a result of defendant’s mistreatment of her, to obtain a separation. • She claims that it was at that time that she was advised of a possible defect in her legal status. By this action she seeks a declaration that her marriage with the defendant is a nullity by reason of the fact that defendant’s marriage to his first wife was not dissolved at the time of the marriage of the parties herein, or in the event the Nevada divorce could not be collaterally attacked, an annulment of the marriage on the ground of alleged misrepresentations made by defendant to induce her into marriage. Finally, she seeks damages from defendant for fraudulently inducing her to enter into a void marriage. By way of counterclaim, defendant seeks a judgment for separation on the ground of abandonment.
Insofar as the Nevada divorce obtained by the defendant herein is concerned, we start with the general proposition that a judgment of absolute divorce obtained upon constructive service in which the nonresident did not appear or participate, if valid in the State granting the divorce, is entitled to full faith and credit in any other State, including the State of matrimonial domicile (Williams v. North Carolina, 317 U. S. 287). In such instance, however, the domicile of the party obtaining the divorce is an important factor (Harges v. Harges, 21 Misc 2d *224 59), and if the facts show that the residence in a foreign State was solely for the purpose of getting a divorce, or is otherwise shown to be sham, full faith and credit need not be afforded (Matter of Lindgren, 181 Misc. 166). The question of domicile is one of fact to be determined on evidence submitted (Zekowski v. Zekowski, 191 Misc. 914), and where found not to be bona fide, may be attacked by strangers to the decree such as future spouses (Jackson v. Jackson, 274 App. Div. 43).
In the instant case, defendant testified that he went to Nevada at “ the end of January or early in February, 1942 ” and after a few weeks filed for divorce. He returned to New York about four months later, although he claims that he entertained the idea of living in Nevada. In the interim, however, he maintained Ms residences in New York State, and does not appear to have taken any steps to wind up affairs here. In addition, he has voted here uninterruptedly since he became a naturalized citizen. All things considered, the conclusion is inescapable that defendant’s migration to Nevada was not to take up permanent residence nor to surrender his New York domicile, but solely for the purpose of procuring a divorce. In such circumstance, his allegations of domicile must be deemed to have been a fraud on the Nevada court and his ultimate divorce a nullity. Thus, when the parties herein underwent a marriage ceremony, defendant was still married to his first wife. His marriage to plaintiff is, therefore, a void one.
In reaching this determination, the court is aware that the full faith and credit clause of the Constitution precludes collateral attack on a foreign divorce decree by a third party, unless the law of the State granting the divorce permits such attack (see Rosenbluth v. Rosenbluth, 34 Misc 2d 290; Weisner v. Weisner, 18 A D 2d 997), and under the laws of Nevada such decrees probably may not be subjected to collateral attack (see Calvert v. Calvert, 61 Nev. 168). This, however, presupposes an appearance in the Nevada action by both parties, and has no application to cases where the jurisdictional findings have been made by a court of a sister State which has entered a divorce decree in ex parte proceedings (Williams v. North Carolina, 325 U. S. 226; cf. Sherrer v. Sherrer, 334 U. S. 343). It is, therefore, only where there has been participation in Nevada by both parties to a divorce, where full opportunity was given to contest the jurisdictional issues, that the requirements of full faith and credit are met (Coe v. Coe, 334 U. S. 378, 384). It is abundantly clear that such is not the case here.
It is defendant’s further contention herein, however, that even if plaintiff is found to be a proper person to collaterally attack *225 the Nevada decree, to obtain an annulment in this action she must initially prove that defendant’s first wife was free to marry the defendant. In other words, she must prove that the marriage which impedes her own was itself a valid one. To support this proposition, defendant relies on Apelbaum v. Apelbaum (7 A D 2d 911 [2d Dept.]), which states as follows: “ The presumptions favoring validity of marriages and legitimacy of children are so strong as to eclipse the presumption that might otherwise protect the validity and subsistence of a prior marriage of one or another of the parties and to place upon the party who seeks to rebut these presumptions the burden of showing that the prior marriagé or marriages were valid and not terminated prior to the marriage in question, even though this might require proof of a negative.”
A proper reading of the Apelbaum case (supra) however, would indicate thát defendant’s reliance upon it, as support for the proposition he proffers, is misplaced. The case rightfully holds that one asserting the invalidity of a later marriage, such as plaintiff here, must prove the continued existence of the first marriage, to wit, that it did not end in divorce, or by death, etc. (see 15 N. Y. Jur., Domestic Relations, § 65, p. 304; see, also, Matter of Durgo, 261 App. Div. 236, affd. 287 N. Y. 595; Matter of Conklin v. Tuttle, 234 App. Div. 1, affd. 260 N. Y. 663). It does not hold that plaintiff must go beyond that and prove the capacities of the original parties to marry. That defendant’s first wife was living at the time the marriage here in question was contracted, and that her marriage to defendant was never validly terminated prior to plaintiff’s marriage to defendant, is established in the record. It is not incumbent on the plaintiff to prove more.
Having contracted an invalid marriage, the fact that defendant subsequently obtained an Alabama decree of divorce against his first wife is of no relevance. Even if the later decree is valid, it cannot validate a prior void marriage (Shor v. Shor, 20 Misc 2d 1052). For the foregoing reasons, plaintiff’s request that her marriage to defendant be declared null and void is granted, and defendant’s counterclaim for separation is dismissed.
There remains herein the issue as to- whether plaintiff is entitled to damages for defendant’s inducing her to enter into and cohabit under a void marriage.
An action for deceit lies in this State against a man who, by means of fraudulent misrepresentations as to his capacity to marry, induces a woman to enter into a void or voidable marriage with him (Blossom v. Barrett, 37 N. Y. 434; Benintendi v. Benin *226 tendi, 1 Misc 2d 474, affd. 273 App. Div. 969, affd. 298 N. Y. 848; Friedman v. Libin, 4 Misc 2d 248, affd. 3 A D 2d 827). This is to be distinguished from an action for fraudulent inducement of a putative marriage, that is, inducement to undergo an unauthorized marriage ceremony resulting in cohabitation under a supposed marriage which is in fact nonexistent, which has recently been held inactionable in this Department because of section 61-b of the Civil Practice Act, the so-called “heart balm ” statute (Tuck v. Tuck, 18 A D 2d 101).
The essential elements required to sustain an action for deceit are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that the other party did in fact rely on it and was induced thereby to act to his injury or damage. In addition, deceit may be committed by a suppression of truth as well as the suggestion of falsehood, if it relates to a material matter known to the party and which it is his legal duty to communicate to the other contracting party (23 Am. Jur., Fraud and Deceit, §§ 20, 76, 77).
In the case at bar, defendant procured his divorce in Nevada, married again, divorced his second wife, and then married plaintiff. Nowhere does it appear that prior to his subsequent marriages did he know that his Nevada divorce was defective. It appears, rather, from the testimony herein, that he was unaware of his precarious legal position until sometime after his marriage to the plaintiff, when some difficulty with his first wife arose and he was made aware of the fact that a conclusive termination of their marriage was perhaps not effected, and that he should do something to resolve it. It was this which apparently prompted his trip to Alabama. Moreover, even if it were shown that defendant made misrepresentations concerning the validity or effect of his first divorce decree, such misrepresentations have been held to be merely misrepresentations of law, not actionable by the deceived putative spouse in the absence of a confidential relationship existing between the parties when the representations were made (Lefferts v. Lefferts, 243 App. Div. 278; cf. Benintendi v. Benintendi, supra, where such confidential relationship, at the time of the misrepresentations, was found).
There is some indication herein that defendant might have been guilty of deceitful conduct when he represented to plaintiff that the Alabama divorce cleared the cloud on their marital status and thus induced her to cohabit with him. This, however, *227 amounts to nothing more than seduction, as to which actions are barred as against public policy (Civ. Prac. Act, § 61-b; Tuck v. Tuck, 18 A D 2d 101, supra). Even if this were actionable, the question of defendant’s reliance on legal advice, albeit erroneous, to support his claim that the marriage was valid, would have to be considered.
There is one other factor which militates against plaintiff’s recovery herein. The rationale behind permitting recovery for conscious misrepresentations that one is free to m-arry, or failures to disclose a bar thereto, lies in the fact that the innocent party 1 ‘ has been induced to live * * * in a meretricious relation” (Restatement, Torts, § 555). The injury thus is to the plaintiff’s virtue and the damages are to compensate her for her humiliation, disgrace and mental anguish (Alexander v. Kuykendall, 192 Va. 8). At bar, plaintiff admitted that she was intimate with defendant prior to their marriage. Thus, while the court presumes to make no moral judgment on the personal relationship of mature adults, it must deny recovery because plaintiff, by her conduct, could not make legal claim for an assault on her virtue.
For the foregoing reasons, the court finds that plaintiff is not entitled to monetary damages.