Alonzo J. Prey
(Acting Supreme Court Justice). This is an action for separation, which was commenced by the plaintiff in May of 1964 on the ground of cruel and inhuman treatment and abandonment. The defendant appears and counterclaims for an annulment, alleging that the divorce granted to the plaintiff from her first husband in the State of Alabama in July of 1959 was invalid, and that, therefore, the marriage between the parties to this action is null and void, and also that the *799 complaint of the plaintiff be dismissed, and that he have affirmative judgment in his favor annulling the marriage between the parties hereto.
The case came on for trial before the undersigned on February 24 and 25,1966, in the City of Buffalo, New York, at which time the testimony of the plaintiff and her witness, Dr. Graser, was heard. The plaintiff produced no other witnesses, and the defendant rested upon the plaintiff’s case after the transcripts of the examinations before trial taken January 12, 1965 and May 3, 1965, respectively, were received in evidence.
The plaintiff and her present husband, the defendant in this action, were married in Erie County on the 14th day of February, 1960. There is no issue of the marriage. The plaintiff has an adopted daughter of whom she has custody, the adoption having been approved during her prior marriage to her former husband, Bussell Brock. The defendant has two children, issue of his first marriage, whose support he is providing for. The plaintiff receives $25 per week from her former husband for the support of her adopted infant daughter.
The plaintiff obtained a divorce from her first husband in the State of Alabama on the 24th day of July, 1959. Her present husband also obtained a divorce from his first wife in the State of Alabama. The plaintiff consulted a lawyer suggested to her by her present husband, and the lawyer and his associates made arrangements for her to go to Alabama and secure her divorce.
Her plans first were to obtain her divorce in Nevada, but the defendant, having been so satisfied with his Alabama divorce and pleased with the fact that it could be obtained so easily and quickly, convinced her, the plaintiff, that she should obtain her divorce in Alabama, and, consequently, she did.
Her husband, the defendant in this action, took her to the airport, and she arrived in Birmingham, Alabama, the same day. She visited the lawyer’s office twice. The first time, she delivered papers which had been given to her; as testified to, they were the waiver and consent of her former husband to the Alabama divorce. She visited the lawyer’s office in the afternoon and gave testimony but never appeared in court. She testified frankly that she was never a resident of the State of Alabama. She obtained the decree and returned to Buffalo the same day and was met at the airport by her present husband the same day she returned.
Their marriage to each other occurred about six or seven months after the Alabama divorce.
In order to make a determination in this matter, it becomes necessary first to determine whether or not the plaintiff’s *800 divorce in Alabama was a valid divorce, enabling her to contract a valid remarriage in the State of New York. Consideration first, therefore, must be given to the law applicable to such question before considering the plaintiff’s cause of action for separation, because if she was not validly divorced, there could not have been a valid marriage to the defendant, and, therefore, could have no equitable standing in court for a cause of action for separation.
The plaintiff places great reliance, in her contention that the Alabama divorce was valid, on the decision in the case Rosenstiel v. Rosenstiel (21 A D 2d 635, affd. 16 N Y 2d 64 [July 9, 1965]). It is also the plaintiff’s contention that the defendant is estopped to the question of the validity of the plaintiff’s Alabama divorce, because of the defendant’s participation in the Alabama proceedings.
The only participation was, first, that he, the defendant, convinced her that she should seek her divorce in Alabama; and, second, the taking of her to the airport, and meeting her on her return. That activity is not such a participation as will create an estoppel against the defendant to challenge the validity of the Alabama divorce. If he had paid the plaintiff’s transportation or counsel fees or her expenses while in Alabama and/or other obligations of that sort, then the question of estoppel might properly arise. There was no proof of any such contribution on the defendant’s part in the Alabama action, and the court holds that as a matter of law, there was not such a participation which creates an estoppel as to the defendant in challenging the validity of the Alabama divorce.
The plaintiff testified that in her Alabama proceedings, and in the testimony there taken, she made no statement as to where she resided, but on direct examination, in the case at issue, as to her place of residence, she said that she and her husband were and are both residents of Erie County, that she enplaned for Birmingham about seven in the morning and returned the same day. A certified copy of the Alabama decree was duly received, defendant’s Exhibit A in evidence, which recites perfunctorily that the cause was heard on a bill of complaint, answer, and waiver of the defendant, directing that the plaintiff pay the costs and that the agreement of the parties dated July 1, 1959, be incorporated into the decree the same as if fully set forth therein, and the decree was signed at the end “ Bob Moore, Jr., Judge, ” in the Circuit Court of Marion County, although the City of Birmingham is located in Jefferson County.
The plaintiff testified that she did not go to court in Alabama; that she thought her testimony was taken from her in the *801 lawyer’s office; and that she did not state where she resided; that she really does not remember what she said; that she had a sealed envelope which she said contained her husband’s consent and waiver, which she gave to her attorney; that her husband did not accompany her; that she spent about an hour in the lawyer’s office, the first time she was in his office, then came back and then left Birmingham early that evening the same day; that neither she, nor her former husband, ever resided in Alabama.
There were no additional documentary exhibits as to the Alabama decree introduced in evidence, and the fact that the defendant in that action did not appear in Alabama, but executed papers which the plaintiff testified she delivered to her counsel is the only evidence of her former husband’s consent and waiver in that proceeding.
The Rosenstiel case (supra) was a Mexican divorce, and the rules of residence, appearance of parties, and other jurisdictional requirements are not the same as they are in Alabama, and not in point or controlling in this issue.
A case cited by the defendant as being on all four’s with the case at bar is MaGowan v. MaGowan (45 Misc 2d 972, affd. 24 A D 2d 840 [Oct. 28,1965]). It will be noted that the Rosenstiel case was affirmed by the Court of Appeals on July 9, 1965, so the MaGowan case is later in point of final determination than the Rosenstiel case (supra).
One unique and dominant feature about the concurring opinion of Chief Judge Desmond in the Rosenstiel case (supra, p. 78) is that he said:
“ It is suggested, too, that a Juarez divorce is some sort of official ‘ act of State ’ of a sovereign foreign power and, as such, safe from our scrutiny or ban. That might be so as to Mexico divorcing her own citizens. But our recognition of any foreign judgments is a mere act of official courtesy, implying no surrender of our own sovereignty. There is no compulsion. "Were we to give credit to these Mexican judgments we would as a court be turning our backs on New York’s restrictive divorce policy and allowing the divorce of our own citizen-residents by a foreign government having no interest in the marriage res.
“ For these reasons I vote for a declaration that such divorces are void, but I am not bound to and do not vote to give this ruling any more than prospective effect. I cannot shut my eyes to the realities. Tens of thousands of such purported divorces have been granted to New Yorkers who acted on advice of attorneys who relied on 25 years of decisions by the New York lower courts. No social or moral purpose would rtow bo served *802 by ruling that marriages long ago dissolved are still in existence, and the result would be destructive to the present homes, marriage and lives of those who remarried on the strength of Juarez decrees. This court has a clear right to give our ruling prospective effect only (see Lyon v. Richmond, 2 Johns. Ch. 51; Harris v. Jex, 55 N. Y. 421; Great Northern Ry. v. Sunburst Co., 287 U. S. 358; Linkletter v. Walker, 33 U. S. L. W. 4576) and justice and fairness dictate that we should do so and refuse to allow these plaintiffs or others to attack collaterally such past-rendered Mexican ‘ one-day ’ divorces. ’ ’
And the court in addition said (p. 78): “ In each case the order should be affirmed, with costs, but with the clear understanding that divorces of this sort granted after the date of the decision of these appeals will be void in New York State.
In the Rosenstiel case, two cases were on appeal, the Rosenstiel and also the case of Wood v. Wood, which were decided by the same opinion. Now again, I point out the Rosenstiel case involved a Mexican divorce.
In the case at bar, the defendant is challenging a divorce granted in a sister State and different rules apply. In the MaGoivan opinion, which was written by Justice Louis J. Capozzoli in March, 1964, and which was affirmed by the Appellate Division, First Department, on October 28,1965 (24 A D 2d 840) discussion in great detail of the principles involved with the question as to whether or not full recognition should be given to the Alabama divorce, especially on the question of jurisdiction of the parties, with which this court concurs.
Mrs. MaGowan, when she arrived in Montgomery for her divorce, remained several days there, arriving on February 22d and receiving her divorce on March 4. Afterwards, she went to Florida for a vacation and then returned to Montgomery, Alabama, where she stayed two weeks before she returned to New York. On the case at bar, the plaintiff arrived there before lunch and returned to Buffalo the same day. The plaintiff in the MaGowan case vigorously contended that the Alabama decree was rendered in a proceeding in which both parties appeared and that the decree is conclusive and must be respected by New York. In the opinion of Justice Capozzoli, it is stated (p. 978): “ This contention is directly contrary to the holding in Rosenbluth v. Rosenbluth [34 Misc 2d 290] and Weisner v. Weisner [18 A D 2d 997]. It is also contrary to the language of the court in Williams v. North Carolina [325 U. S. 226] ”. The court said further (pp. 978-979): “ The Plaintiff overlooks the fact that there is an important distinction between a jurisdictional issue, *803 decided after full and fair litigation, in which the issue is sincerely disputed, and a conclusion reached by the court resulting from collusion between the parties which perpetrates a fraud upon the court. ”
The judgment in the MaGowan case was based upon facts almost identical with the facts at bar, and the MaGowan decree in Alabama was declared invalid.
In the Bosenstiel ease (supra), a strong dissent was rendered by Judge Scileppi which should be given consideration. He said (pp. 86-87): “ This court has a duty not to sanction the casual and consensual dissolution of the marriage contract by two of the three parties interested therein. This is especially true in light of the clear public policy announced in section 5-311 of the General Obligations Law and in Viles v. Viles (14 N Y 2d 365). To recognize these divorces is to disregard the traditionally solemn nature of the marriage contract (see Fearon v. Treanor, 272 N. Y. 268, supra), legislative pronouncements (e.g., Domestic Relations Law, § 170; General Obligations Law, § 5-311), and decisions of this court (e.g., Viles v. Viles, supra; Caldwell v. Caldwell, 298 N. Y. 146, supra).
‘ ‘ I am fully aware that a vast number of our citizens, relying upon the pronouncements below, have remarried, established families, acquired property, and engaged in many activities, personal and financial, as husband and wife. To accord this decision traditional retroactive effect would indeed have profoundly convulsive and disruptive effect on our State, and on our citizens, who acted in good faith reliance on the law as enunciated below. However, to hold this divorce valid merely because our lower courts have been recognizing similar ones as such, and because many have placed reliance on those decisions, is no answer to the public policy considerations presented in this case. If this divorce is void, we should say so regardless of these prior decisions in our lower courts. Nonetheless, I also recognize that there are public policy considerations which should be taken into account concerning parties who have already obtained such divorces in reliance upon those decisions. Therefore, again as a matter of public policy, I would hold that, although Mexican divorce decrees of this type are void, this decision should not be applied retroactively. It is certainly within our power as the highest court in the State to give a decision such effect and not violate the Federal Constitution (Great Northern Ry. v. Sunburst Co., 287 U. S. 358, 364). I point out that this is a case where there are overriding and compelling reasons of public policy for refusing to give retrospective effect. I note that no *804 one is being injured and no established rights are being impaired by such a disposition.
“ The doctrine of prospective application is a device which I believe should be invoked only in the most compelling circumstances. Such circumstances are here presented. The doctrine has been applied in Michigan (Parker v. Port Huron Hosp., 361 Mich. 1), when the court renounced charitable immunity for nonprofit hospitals, noting: ‘ We believe the new rule should apply to the instant case and to all future causes of action arising after September 15, 1960, the date of the filing of this opinion ’ (361 Mich., p. 28).”
This is exactly the feeling that this court has in dealing with this Alabama divorce which the defendant says was void. If there comes a time when a new rule is applied, why should the! court say that one set of cases should be considered in one light, while others would be given a different interpretation?
As Judge Scileppi says in his dissenting opinion in the Rosenstiel case (pp. 87-88): “ At least two compelling reasons exist for applying the new rule to the instant case while otherwise limiting its application to cases arising in the future. First, if we were to merely announce the new rule without applying it here, such announcement would amount to mere dictum. Second, and more important, to refuse to apply the new rule here would deprive appellant of any benefit from his effort and expense in challenging the old rule which we now declare erroneous. Thus, there would be no incentive to appeal the upholding of precedent since appellant could not in any event benefit from a reversal invalidating it.”
I conclude, therefore, that the Alabama divorce which the plaintiff obtained was invalid since her former husband was alive and his marriage to the plaintiff was in full force when she married the defendant herein. The marriage, therefore, by the plaintiff and the defendant Yenoff is void, and there is no estoppel against him challenging its validity.
The plaintiff’s action for separation, therefore, must fail and accordingly, judgment is directed in favor of the defendant dismissing the separation action of the plaintiff and for affirmative judgment in favor of the defendant against the plaintiff annulling the marriage to the plaintiff in this action.
It therefore, becomes unnecessary to consider the issues of the plaintiff’s action for separation.
It does become necessary, however, for the court to determine the obligation of the defendant for the support of his former wife, the plaintiff, Betty J. Yenoff, pursuant to the provisions of section 236 of the Domestic Relations Law.
*805 It also becomes necessary to fix and determine adequate counsel fees for the plaintiff in this proceeding.
The court has read the transcript of the testimony of the defendant taken on two hearings before trial and has had the benefit, help, and assistance of the memorandum submitted by the defendant as well as the defendant’s supplemental memorandum on the subject of the defendant’s financial status and his ability to pay alimony. The defendant admits an income of $18,000 per year from one source, and the picture is unclear as to the amount of additional income from various sources, although it appears it may be substantial. The court notes the defendant’s willingness to convey his interest in the family home at 520 Brantwood Drive, Amherst, New York, to the plaintiff, and the court takes into consideration the defendant’s obligations for the support of his two children, issue of a prior marriage, and his indebtedness.
The court also takes into consideration the plaintiff’s obligations with respect to the home and is of the opinion that she should modify her mode of life to less expensive quarters to the end that she can live within the income provided for her as hereinafter set forth together with the funds which she receives from her first husband for the support of her adopted daughter.
The findings and conclusions of the court, therefore, as to the support, counsel fees, and jointly owned property are as follows:
first. The defendant shall be directed to convey his individual interest in the house at 520 Brantwood Drive, Amherst, New York, to the plaintiff.
second. The court makes no determination of the alleged loans made by the plaintiff to the defendant, proof of which was incomplete and there being no specific prayer for that kind of relief on that issue in the complaint, which should be the subject of separate action.
third. The defendant shall be directed in the final judgment herein to pay to the plaintiff the continuing sum of $75 per week for her support and maintainence in accordance with the provisions of the order of Justice Catalano, dated June 4, 1964.
fourth. The defendant shall pay to the plaintiff for her counsel fees in this action the total sum of $1,500, which shall include the $500 allowance made by the order of Justice Catalano above referred to dated June 4,1964.