OPINION OF THE COURT
Kristin Booth Glen, J.
This motion for reargument brought by defendant husband presents an interesting jurisdictional question which is or may be one of first impression in New York. The question presented is whether a defendant who appeared in a New York divorce action and admitted New York residence in a sworn statement can subsequently challenge the jurisdiction of the court to enter a judgment of divorce based on the fact that neither party had any connection to the State of New York and that New York therefore had no jurisdiction over the marital res, or whether the defendant’s participation in the *629 action and the "fraud” perpetrated upon the court should estop him from attacking the judgment which he aided in obtaining. In order to consider this question, the facts of the instant case must first be reviewed.
FACTS
Plaintiff and defendant were married in Rumania on July 19, 1969, and came to the United States in 1977. On March 1, 1984, the parties entered into a written separation. agreement.[1] That agreement, notarized by a New York attorney, shows the defendant’s address as 55 Park Avenue, New York, New York, and the plaintiff’s address as 1087 Abbott Boulevard, Fort Lee, New Jersey. A year later plaintiff commenced an action for divorce in New York County based upon the existence of the separation agreement. An uncontested divorce was granted on April 5, 1985, by Referee Florence Belsky, and the separation agreement between the parties was incorporated by reference into the judgment of divorce.
Among the papers submitted in connection with the uncontested divorce was a "defendant’s affidavit, action for divorce”. In that affidavit, sworn to by defendant on March 4,
1985, defendant admitted service of the summons and complaint, appeared but waived the opportunity to answer, waived the service of all further papers in the action except for the judgment of divorce, and specifically stated "I reside at 55 Park Avenue, New York, New York 10016.”
Twenty-two months after the divorce was granted, on October 10, 1986, plaintiff moved for an order compelling the defendant to transfer ownership of the marital abode as required by the terms of the agreement. On January 8, 1987, defendant cross-moved to vacate the divorce judgment claiming that the court lacked jurisdiction and that the agreement was unfair and induced by fraud, duress and overreaching. On August 27, 1987, I denied the cross motion and set the contempt relief requested in the motion itself down for a hearing.
On October 5, 1987, defendant moved for reargument of my decision. In this motion, defendant, now represented by counsel, argues, inter alia, that to the extent the earlier decision *630 relied upon Lacks v Lacks (41 NY2d 71 [1976]) it was in error. Defendant argues that Lacks is not controlling because in that case there was some evidence of residency by one of the parties in the divorce action, while, he claims, in this case neither party ever resided in New York and there was absolutely no connection to this jurisdiction.
While plaintiff is correct in distinguishing Lacks (supra) itself, I nevertheless adhere to my prior decision.
As stated in my earlier decision, Lacks held that "[A] divorce judgment granted in the absence of one of the specified connections with the State, even if erroneously determined as a matter of law or fact, is not subject to vacatur under CPLR 5015 (subd [a], par 4).” (Supra, at 73.) The Lacks court continued, "Of course, for the judgment to be invulnerable in other States of the Union the minimal contacts with the State required under Federal constitutional standards, and satisfied in this case, must also be present (see Sosna v Iowa, 419 US 393, 407-408; Williams v North Carolina, 325 US 226, 229-230).” (Supra, at 73.) Or, to put it another way, as another court later wrote about the Lacks decision "[A] defendant who had appeared in a New York divorce action could not, after final judgment, collaterally attack the subject matter jurisdiction of the court to make the decree as void in New York or elsewhere on the basis that the plaintiff’s New York residence had subsisted less than the one-year or two-year period called for by the statute * * * so long as the plaintiff had the minimal contacts with New York said to make the decree enforceable under the full faith and credit clause.” (Matter of Brown, 132 Misc 2d 811, 820 [Sur Ct, Kings County 1986].)
The papers in support of and in opposition to the cross motion clarify that neither of the parties ever, in fact, resided in the State of New York. Although there were some contacts, to wit, the plaintiff worked in New York and the separation agreement was signed in New York, if residence or domicile of one of the parties is necessary to permit a State to dissolve a marriage, and have its judgment of dissolution subject to the full faith and credit requirement of the Federal Constitution, it cannot be said that there was jurisdiction here.
This, however, is not the end of the inquiry. State and Federal courts have not hesitated to find challenges to divorce decrees based on lack of jurisdiction subject to, and defeated *631 by rules of estoppel where the challenging party was a participant in the challenged divorce. The leading case is Sherrer v Sherrer (334 US 343, 351-352 [1948]) where the Supreme Court wrote "[T]he requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree.”
New York courts have consistently followed the Sherrer rule in estopping litigants here from attacking foreign divorce decrees where those litigants appeared in the foreign court and did not contest jurisdiction there. For example, in Rosenbluth v Rosenbluth (34 Misc 2d 290, 292 [Sup Ct, Sullivan County 1962]) the court found "[Generally * * * a granting State will not permit a collateral attack therein on one of its divorce decrees by one of the parties thereto, where both parties have appeared in the action and thus conferred jurisdiction of the person, even though through fraud practiced on the court as to residence, they have ostensibly conferred jurisdiction of the subject matter, i.e., the marital status or res * * * This denial by the granting State is based upon the equitable doctrine of estoppel.” Accordingly, the defendant who sought to challenge the Alabama divorce in which he had fraudulently participated was collaterally estopped in New York. (Accord, e.g., Nitschke v Nitschke, 21 Misc 2d 632 [Sup Ct, Queens County 1959]; Kleinberg v Kleinberg, 7 Misc 2d 233 [Sup Ct, Kings County 1957].) It is clear that the courts of New York have had no problem in denying relief to plaintiffs or defendants who have participated in foreign divorces even though there was absolutely no basis for jurisdiction in those States. The only question presented in those cases, and inevitably answered in the affirmative, was whether the granting State would collaterally estop the parties seeking relief from attacking its judgment.
In the instant case, however, for what appears to be only the second time in New York, the attack is made not on a foreign divorce but on one obtained in this State. The question is whether New York, like other States, will apply the collateral estoppel rule, or whether it will not. The only reported *632 case found which addresses this issue is Verney v Verney (53 AD2d 608 [2d Dept 1976]).[2]
In Verney (supra) the plaintiff secured a divorce in Queens County in 1971. Almost four years later, defendant moved to enforce that judgment and the plaintiff cross-moved for various relief including vacatur of the divorce decree for lack of subject matter jurisdiction. It was undisputed that the defendant had never resided in the United States and the plaintiff had not resided in New York for two years continuously preceding the commencement of the action. Special Term denied the cross motion, but the Appellate Division reversed on two grounds. The court stated "The situation at bar is thoroughly unique insofar as we have a New York plaintiff challenging the jurisdictional basis of a New York divorce decree which he, himself, sought. However, the doctrine of estoppel, which defendant would have us invoke against plaintiff, is not effective as against a claim of lack of subject matter jurisdiction and, upon the particular facts before us, is quite inappropriate.” (Supra, at 609.)
In adhering to the pr e-Lacks view of jurisdiction which it had previously set forth, the court apparently held that jurisdictional challenges could not be subject to estoppel. It is at least arguable that the Lacks decision (supra) erases the basis for this portion of the court’s holding.
The other portion of the court’s holding, that based on the facts of the case, is not controlling in the instant case, and indeed suggests a contrary result here. The court noted forcefully "[tjhere is absolutely no question here of fraud or deceit.” (Supra, at 609.) The court explained the facts of the case as follows "[Defendant * * * moved early in the divorce proceeding to dismiss the complaint for lack of jurisdiction, which motion was denied without prejudice to its renewal *633 upon additional facts * * * The motion was never renewed and the parties entered into a stipulation, settling the matter, in open court. In testimony taken in support of the allegations of the complaint, plaintiff thereafter truthfully set forth all the pertinent facts which, on their face, indicated a lack of subject matter jurisdiction. Yet Special Term, inexplicably, found itself possessed of jurisdiction and granted plaintiff a judgment of divorce.” (Supra, at 609; emphasis in original.)
In the instant case, if defendant is now to be believed, he misled the court twice as to his residence. First, the separation agreement which forms the basis for the divorce showed his address as 55 Park Avenue, New York, New York. Second, his affidavit in support of the uncontested judgment showed a similar address. Defendant now tells us that this was his wife’s attorney’s home address and not his at all. The fact remains that defendant twice swore to New York residency and is thus in an entirely different situation than the plaintiff in Verney (supra).
Participation and acquiescence in a divorce proceeding in virtually any other State is sufficient to estop a party who subsequently seeks to set aside the judgment of that State. Where fraud on the court is added, the reasons for estoppel are even more compelling. It would be anomalous and unfair for a New York court to hold this defendant collaterally estopped from attacking his divorce if it had occurred in any other State in this country, but to permit him to successfully challenge it in this State.
The doctrine of estoppel as adopted by the Supreme Court in the Sherrer case (supra) balances the individual’s need for due process against interests of finality in judgment. When an individual has appeared in an action, had full opportunity to contest jurisdiction, failed to contest such jurisdiction, and indeed even affirmatively stated that there was jurisdiction, regardless of the truth of that fact, the interest in finality should prevail. It would in any other State, and it should in New York as well.
Because Verney (supra) was decided before Lacks (supra), and because there is fraud on the court in the instant case while there was not in Verney, I do not believe that Verney is controlling, and accordingly find that the defendant is estopped from challenging the divorce decree in this case. In all other respects I adhere to my prior decision.

. Defendant claims that the agreement was signed a year later, shortly before the divorce action was commenced, but that fact, aside from the general fraud which may have been perpetrated here, is not relevant on this reargument motion.

. It is interesting to note that Verney v Verney (53 AD2d 608) was decided in June of 1976 and Lacks v Lacks (41 NY2d 71) was decided in December of that year. The Verney court relied on pr e-Lacks decisions in writing "These statutory residence requirements have been deemed jurisdictional in nature and, in Eckert v Eckert (34 AD2d 684), this court expressly held that the failure to meet such requirements deprived the court of jurisdiction over the subject matter of the action * * * since the Supreme Court’s jurisdiction in matrimonial actions is limited to such powers as are expressly conferred by statute, and as the applicable statute provides that a matrimonial action may only be maintained when certain residency requirements are met, noncompliance therewith leaves the court without any power to act judicially upon the matrimonial status or res. ” (Supra, at 608.) It was, of course, precisely this reasoning which the Court of Appeals reversed in Lacks (supra).